KERRY GREEN,                           )
                                       )
          Petitioner,                  )
                                       )
     v.                                )          No. 4:13-CV-811-SPM
                                       )
IAN WALLACE,                           )
                                       )
          Respondent.                  )


## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Kerry Green's ("Petitioner's") *pro se*

amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 30). The parties

have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to

28 U.S.C. § 636(c)(1). (Doc. 22). For the following reasons, the amended petition for a writ of

habeas corpus will be denied.

### I. FACTUAL BACKGROUND

The following background is taken from the decision of the Missouri Court of Appeals

affirming Petitioner's convictions on direct appeal:

> In February 2008, Edmond Mack (Victim) shared the upstairs unit of a
> two-family flat with his friend, Avedou ("Vedo") Halkmon. Vedo Halkmon's
> older brother Ronald Halkmon had been living in the downstairs unit with his
> girlfriend, Peaches. On February 25, 2008, Ronald and Peaches were moving
> out of the downstairs unit, and Ronald's and Vedo's cousin, Carlos Vaughn was
> moving in with his girlfriend.
>
> When Vedo arrived home on the evening of February 25, 2008, he saw
> Ronald standing on the front porch with [Petitioner] and Vaughn. Vedo greeted
> the three men and continued upstairs to his apartment. Later, Ronald knocked on
> the door to the upstairs apartment and used Vedo's cell phone to call the landlord
> and demand the return of his security deposit. After arguing with the landlord for
> twenty to thirty minutes, Ronald left the apartment. He returned a short time later

and asked Vedo for a cigarette. Both times Ronald knocked on the door, Vedo answered it.

A few minutes later, Ronald knocked on Vedo and the Victim's door a third time. Victim answered the door, then headed back up the stairs. Vedo heard Ronald say to Victim, "Let me holler at you for a moment," and Victim went back down the stairs. Ronald proceeded to confront Victim about an argument he claimed Victim had with Peaches, saying, "What's that shit going on with you and Peaches?" Victim denied having said anything to Peaches, told Ronald to "go get Peaches" so that she could settle the matter, and headed back up the stairs. Victim said, "You trippin', Ron," immediately before Ronald fired a .38 revolver into Victim's back.

After Ronald shot Victim, he pulled Victim down the stairs. Ronald tried unsuccessfully to pull Victim outside, but Victim resisted by wedging his arms against the door. At this point, [Petitioner] and Vaughn went through Victim's jeans pockets. When they had finished, Ronald, [Petitioner], and Vaughn drove away in a burgundy and brown truck that [Petitioner] had been driving.

When Vedo heard the gunshot, he ran to the top of the stairs, shouting repeatedly at Ronald, "I know you ain't just shoot [Victim]." When he saw that Victim had been shot, Vedo ran back inside and called 911. When the police arrived, they found Victim dead, with his right pants pocket turned inside-out.

The State charged [Petitioner], Ronald, and Vaughn under the same indictment. The State charged [Petitioner] and Vaughn each with one count of murder in the second degree, one count of robbery in the first degree, and two counts of armed criminal action. The State charged Ronald with first-degree murder and armed criminal action.

Prior to trial, [Petitioner] filed a motion to sever his case from Ronald's. After a hearing, the trial court denied [Petitioner]'s motion to sever. After a week-long jury trial, the jury found [Petitioner] guilty on all charges. The jury also found [Petitioner]'s codefendants, Ronald and Vaughn, guilty on all charges. The trial court sentenced [Petitioner], as a prior and persistent offender, to thirty years' imprisonment.

Resp't Ex. B, at pp. 4-6.

## II.   PROCEDURAL BACKGROUND

In his direct appeal, Petitioner asserted five claims of trial error. Resp't Ex. A, at p. 2. The

Missouri Court of Appeals affirmed the judgment. Resp't Ex. B. On April 1, 2011, Petitioner

filed a *pro se* motion for post-conviction relief. Resp't Ex. C. On July 18, 2011, through counsel,

Petitioner filed an amended motion for post-conviction relief, in which he raised several claims

of ineffective assistance of counsel and one claim of prosecutorial misconduct. Resp't Ex. D, at

pp. 2-11. The motion court denied the amended motion. Resp't Ex. E. Petitioner appealed, Resp't Ex. F, and the Missouri Court of Appeals affirmed the denial of the motion, Resp't Ex. G.

On April 25, 2013, Petitioner filed his *pro se* petition in the instant action, in which he asserted eleven grounds for relief. (Doc. 1). On May 8, 2014, with leave of this Court, Petitioner filed an amended petition in which he asserted fourteen grounds for relief: (1) that there was insufficient evidence to convict him of robbery and the accompanying count of armed criminal action; (2) that there was insufficient evidence to convict him of felony murder and the associated count of armed criminal action; (3) that the trial court erred in denying Petitioner's motion to sever his trial from that of his co-defendant, Ronald Halkmon ("Ronald")[1]; (4) that the trial court erred by allowing the state to introduce evidence concerning the circumstances surrounding Petitioner's arrest; (5) that the trial court erred in not allowing Petitioner the opportunity to present evidence that the day before the offense, Ronald had shot a gun at his girlfriend, Peaches; (6) that Petitioner's direct appeal counsel was ineffective because counsel failed to appeal the trial court's admission of the prior consistent statements of Avedou; (7) that Petitioner's trial counsel was ineffective because she failed to object to the questioning of Detective Jackson with regard to statements made to him by Shante Jennings; (8) that trial counsel was ineffective because she failed to cure the damage done to the defense by the state's opening statement promising the testimony of Shante Jennings; (9) that trial counsel was ineffective because she failed to pursue Petitioner's motion to suppress an in-court identification and to request a ruling on the motion; (10) that trial counsel was ineffective because she failed to investigate and challenge the validity of Petitioner's arrest and to move to suppress all evidence obtained after the arrest; (11) that Petitioner was denied the right to a fair trial due to

---

[1] Because some of the individuals involved in this incident have the same last name, the Court will refer to some individuals by their first names.

prosecutorial misconduct based on the prosecutor's failure to disclose that he had lost contact with witness Shante Jennings; (12) that Petitioner was denied the right to a fair trial due to prosecutorial misconduct in that the prosecutor argued facts not in evidence; (13) that Petitioner was denied the right to a fair trial due to prosecutorial misconduct based on impermissible burden-shifting; and (14) that the representation of Petitioner's trial counsel as a whole was such that had cumulative errors not occurred, there would have been a reasonable probability of a different outcome. (Doc. 30).

## III.   LEGAL STANDARD

Federal habeas review exists only "as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). Accordingly, "[i]n the habeas setting, a federal court is bound by AEDPA [the Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). Under AEDPA, a federal court may not grant relief to a state prisoner with respect to any claim that was adjudicated on the merits in the state court proceedings unless the state court's adjudication of a claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established Supreme Court precedents "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially

4

indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision involves an "unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407-08; *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (noting that state court factual findings are presumed correct unless the habeas petitioner rebuts them through clear and convincing evidence) (citing 28 U.S.C. § 2254(e)(1)).

## IV.    DISCUSSION

### A.    Ground One: Sufficiency of the Evidence—Robbery and Associated Armed Criminal Action Count

In Ground One, Petitioner argues that his due process rights were violated because there was insufficient evidence to support his convictions for first degree robbery and armed criminal action. Petitioner argues that the state failed to prove that (1) the victim had money in his pocket prior to the shooting, and (2) Ronald shot the victim for the purpose of overcoming resistance to the taking of money. Petitioner raised this claim in his direct appeal, and the Missouri Court of Appeals denied it on the merits. Resp't Ex. B, at pp. 6-8.

In reviewing a challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). *Accord Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012); *Cavazos v. Smith*, 132 S. Ct. 2, 6 (2011). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. State law determines the specific elements of the crimes. *Fenske v. Thalacker*, 60 F.3d 478, 480 (8th Cir. 1995). The federal habeas court's scope of review is very limited. The Court "must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state" and "must defer to that resolution." *Whitehead v. Dormire*, 340 F.3d 532, 536 (8th Cir. 2003) (quotation marks omitted). Furthermore, "a state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was objectively unreasonable." *Parker*, 132 S. Ct. at 2152 (quotation marks omitted).

As Petitioner points out, the verdict director applicable to Count V (robbery in the first degree), Instruction No. 21, instructed the jury to find that the offense of robbery in the first degree had occurred if it found beyond a reasonable doubt that (1) "that on February 25, 2008, [Petitioner] or other persons took money, which was property in the possession of [the victim]"; (2) "that [Petitioner] or other persons did so for the purpose of withholding it from the owner permanently"; (3) "that Ronald Halkmon in doing so used physical force on or against [the victim] for the purpose of overcoming resistance to the taking of the property"; and (4) "that in the course of obtaining the property, Ronald Halkmon was armed with a deadly weapon." Resp't Ex. A, at p. 71. It further instructed that if the jury found that the offense of robbery in the first degree had occurred and that if it further found beyond a reasonable doubt "that with the purpose

of promoting or furthering the commission of that robbery, [Petitioner] acted together with or aided other persons in committing the offense," then the jury should find Petitioner guilty of robbery in the first degree. *Id.* Petitioner does not dispute that the verdict director accurately reflects the elements of the crime under Missouri law.

Petitioner argues that there was insufficient evidence to prove the first element—that Petitioner or others took money that was in the victim's possession—because the state failed to prove that the victim had money in his possession prior to the shooting. Petitioner also argues that there was insufficient evidence to prove the third element because the state failed to prove that Ronald used physical force against the victim for the purpose of overcoming resistance to the taking of the victim's property. Addressing both arguments, the Missouri Court of Appeals first properly articulated the *Jackson* standard described above. Resp't Ex. B, at p. 6. It then noted that under Missouri law, the state may prove its case by presenting either direct or circumstantial evidence connecting the defendant to each element of the crime; that the jury is free to make reasonable inferences from the evidence presented; and that an eyewitness account of the theft itself is not necessary to sustain a conviction for first degree robbery. Resp't Ex. B, at p. 7. The Missouri Court of Appeals then stated:

> From the evidence presented at trial, reasonable jurors could have found that, prior to the shooting, Victim had money on his person and that [Petitioner] used physical force against Victim for the purpose of preventing resistance to the taking of that money. *See, e.g., State v. Weems*, 840 S.W.2d 222, 228 (Mo. banc 1992). The evidence showed that Victim worked odd jobs and sold drugs for money and that he "typically" carried about $50 in cash. On February 25, 2008, Ronald summoned Victim down the apartment stairs, where Ronald was standing with [Petitioner] and Vaughn. Immediately after Ronald shot victim, Vedo saw Ronald holding Victim by his shirt collar, while [Petitioner] and Vaughn "were going through" Victim's pants pockets. The three men ran to [Petitioner]'s truck and drove away. Victim's right front pants pocket was pulled inside-out. The investigating police officer testified that he did not find any cash on Victim's person. This evidence is sufficient to allow an inference that Victim had money in his pants pocket, Ronald shot Victim for the purpose of taking that money, and

7

[Petitioner] and/or his codefendants took Victim's money before fleeing the scene.

In his brief, [Petitioner] claims that Ronald used physical force against Victim, not for the purpose of robbing him, but "based upon his anger toward [Victim]." [Petitioner] goes on to argue that he and his codefendants did not form an intent to rob Victim prior to the shooting, rather, he and Vaughn "just took advantage of the fact that Ronald had shot [Victim]." Contrary to [Petitioner]'s argument, "it is enough that the violence to [Victim] was preceded by or contemporaneous with the taking." *State v. Rhodes*, 988 S.W.2d 521, 526 (Mo. banc. 1999).

Resp't Ex. B, at pp. 7-8.

A review of the record shows that the Missouri Court of Appeals' rejection of this claim was reasonable. Viewed in the light most favorable to the verdict, the evidence showed that the victim did odd jobs and sold marijuana, that he typically carried at least $50 in cash, and that immediately after the shooting, Petitioner and one of his co-defendants went through his pants pockets and then fled the scene. *See* Resp't Ex. I, at Tr. 541-42, 571-73, 708. A reasonable trier of fact could have inferred from that evidence that the victim had money on him and that Petitioner and/or his co-defendants took money from him. Petitioner argues that this case is analogous to *State v. Doss*, 394 S.W.3d 486 (Mo. Ct. App. 2013), in which the court found insufficient evidence to support a finding that the defendants took wallets from a crime scene. *Id.* at 493-94. In that case, the only evidence at trial pertaining to wallets consisted of law enforcement testimony that no wallets were located at the crime scene, which was unusual. *Id.* The Court noted that "there was no evidence indicating that [the victims] had wallets with them that day, or even that they customarily carried the wallets with them." *Id. Doss* is distinguishable, because here there *was* evidence the victim customarily carried money. Moreover, even if this case were not distinguishable from *Doss*, that would not constitute a showing that the Missouri Court of Appeals' decision was contrary to, or an unreasonable application of, clearly established *federal* law, as determined by the Supreme Court of the United States.

The Missouri Court of Appeals' finding that Ronald shot the victim for the purpose of overcoming resistance to the taking of his property was also not objectively unreasonable. The evidence showed that Ronald knocked on the door of the victim's apartment and called him to come downstairs, where Ronald was standing with Petitioner and another codefendant; that Ronald shot the victim; and that immediately thereafter Ronald was holding the victim by the victim's collar and trying to pull him out the door while Petitioner and the other co-defendant were going through his pockets. *See* Resp't Ex. I, at Tr. 560, 564, 568-72. There was also evidence presented that shortly before the murder, Ronald had been very upset that his landlord would not return the money he used for a security deposit, which tends to support a finding of a financial motivation. *Id.* at Tr. 555-56. Based on this evidence, a reasonable jury could have made the inference that Ronald shot the victim for the purpose of taking his money. Petitioner urges the Court to adopt a different inference—that Ronald shot the victim out of anger. However, on habeas review, this Court must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and the Court must defer to that resolution. *See Whitehead*, 340 F.3d at 536. It is not the role of this Court to reweigh the evidence or make its own inferences. Moreover, as the Missouri Court of Appeals reasonably noted in addressing a related claim, "[f]inancial motivation and enmity are not mutually exclusive motives." *See* Resp't Ex. B, at p. 19

Finally, Petitioner argues that the Missouri Court of Appeals' decision involved an unreasonable determination of the facts because the court stated that a reasonable jury could have found "that [Petitioner] used physical force against Victim." *See id.* at p. 7. As Petitioner argues, there was no evidence that Petitioner ever used force against the victim, and the jury instructions required a finding that Ronald—not Petitioner—was the one who used force against the victim.

A reading of the Missouri Court of Appeals' decision as a whole, however, makes it clear that this was a mere typographical error in one sentence; in the rest of its decision, the Missouri Court of Appeals plainly explains that Ronald is the one who shot Petitioner. *See* Resp't Ex. B, at pp. 7-8.

Petitioner's argument that there was insufficient evidence to convict him of armed criminal action based on the robbery[2] is entirely based on his argument that there was insufficient evidence to convict him on the robbery charge. That argument therefore fails as well.

For all of the above reasons, Petitioner is not entitled to relief on Ground One.

### B. Ground Two: Sufficiency of the Evidence—Felony Murder and Associated Armed Criminal Action Count

In Ground Two, Petitioner argues that there was insufficient evidence to support his conviction of felony murder in the second degree under Mo. Rev. Stat. § 565.021(2), as well as the associated armed criminal action count. Petitioner argues that the victim was not killed in the perpetration of the alleged robbery, but rather, the alleged robbery occurred only after Ronald had deliberately murdered the victim out of anger. Petitioner presented this claim on direct appeal, and the Missouri Court of Appeals denied the claim immediately after addressing the claim in Ground One, stating:

> A person is guilty of second-degree, or felony, murder if he committed a felony and, in the perpetration of that felony, another person was killed as a result of the perpetration of that felony. Section 565.021.1(2); *Burrell*, 160 S.W.3d at 803. As previously discussed, there was sufficient evidence to convict [Petitioner] of robbery in the first degree, the felony underlying his conviction for murder in the second degree. There was also sufficient evidence to find that a person was killed as a result of the perpetration of that felony. We therefore affirm the conviction for second-degree murder.

---

[2] A person is guilty of armed criminal action if he or she "commits any felony under the laws of [the state of Missouri] by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon . . . ." Mo. Rev. Stat. § 571.015.

Resp't Ex. B, at p. 8.

The Missouri Court of Appeals' decision was not objectively unreasonable. As discussed above with respect to Ground One, there was sufficient evidence from which a reasonable jury could have found that Ronald shot the victim for the purpose of overcoming resistance to the taking of the victim's property, and that Petitioner was guilty of the felony of robbery in the first degree. For the same reasons, a reasonable jury could have found that the victim was killed as a result of the perpetration of the felony of robbery in the first degree. As with Ground One, Petitioner argues that the evidence better supports a different conclusion—that Ronald murdered the victim out of anger. However, as discussed above, in reviewing a sufficiency of the evidence challenge, this Court must defer to the jury's resolution of the possible conflicting inferences.

For the above reasons, Petitioner is not entitled to relief on Ground Two.

### C.  Ground Three: Failure to Sever

In Ground Three, Petitioner argues that the trial court abused its discretion by denying Petitioner's motion to sever his trial from that of his co-defendant, Ronald. Petitioner raised this argument in his direct appeal, and the Missouri Court of Appeals denied it on the merits. *See* Resp't Ex. B, at pp. 8-13.

To the extent that Petitioner's claim is that the trial court should have severed his trial as a matter of Missouri law, it is not cognizable on habeas review. "[I]ssues of joinder and severance are matters of state law." *Smith v. Bowersox*, No. 4:12 CV 2089 DDN, 2014 WL 1377810, at *5 (E.D. Mo. April 8, 2014). Violations of state law are not cognizable in federal habeas proceedings. *See Lee v. Norris*, 354 F.3d 846, 847 (8th Cir. 2004) ("[A] mere violation of state law . . . is not cognizable in federal habeas."); *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[W]e have repeatedly held that 'federal habeas corpus relief does not lie for errors of state

law.'") (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). "It is not the province of a federal habeas court to reexamine state-court determinations on state law questions." *Id.* (quoting *Estelle*, 502 U.S. at 67-68).

Neither party has identified any Supreme Court standard for evaluating whether the failure to sever constitutes a violation of a constitutional right, nor has the Court found any. However, some lower courts evaluating such claims have used the standard that applies to alleged due process violations, under which habeas relief is warranted only where the petitioner:

> shows that the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair. To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial—i.e., that absent the alleged impropriety the verdict probably would have been different.

*Brutcher v. Cassady*, No. 4:11-CV-1613 ACL, 2014 WL 4823952, at *7-8 (E.D. Mo. Sept. 26, 2014) (quoting *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995) and finding that the issue of improper joinder "is properly analyzed under the standard for alleged due process violations"). *See also Hollins v. Dep't of Corr.*, 969 F.2d 606, 608 (8th Cir. 1992) ("Regardless of the state law governing severance in state trials, this court will not grant relief to a habeas petitioner on this issue unless he can establish that the failure to grant severance rendered the trial 'fundamentally unfair.'"); *Smith*, 2014 WL 137810, at *5 ("[T]o obtain federal habeas corpus relief [based on failure to sever], the joinder must actually render petitioner's state trial fundamentally unfair and hence, violative of due process.") (internal quotation marks omitted).

The Court will assume, *arguendo*, that Petitioner could obtain habeas relief by satisfying the standard applicable to alleged due process violations. However, Petitioner cannot satisfy that standard here, because he cannot show that the failure to sever was so egregious that it rendered his trial fundamentally unfair, nor can he show a reasonable probability that the error complained

of affected the outcome of the trial. Petitioner first argues that he was prejudiced by the admission of evidence that Ronald made a threatening phone call to a witness who was saying that Ronald had killed the victim, which Petitioner claims would not have been admissible had his trial been severed from Ronald's trial. However, the Missouri Court of Appeals, applying Missouri law, found that this evidence "would have been admissible in a separate trial." Resp't Ex. B, at p. 10. This Court may not second-guess the state court's decision on a matter of state law. *See Arnold v. Dormire*, 675 F.3d 1082, 1086 (8th Cir. 2012) ("We do not second-guess the decision of a Missouri state court on Missouri law."). Because this evidence would have been admissible even had the trials been severed, the admission of this evidence cannot be used to show that the outcome of Petitioner's trial would have been different had the motion to sever been granted. Petitioner's second argument is that he was prejudiced by the admission of evidence related to letters Ronald wrote to the police stating that Petitioner was the one who had shot the victim. However, the Missouri Court of Appeals found that Petitioner was not prejudiced by the admission of this evidence, because Ronald testified that his statement that Petitioner had shot the victim was untrue. *See* Resp't Ex. B, at p. 12. The court also noted that the jury's verdict showed that the jury believed the evidence that Ronald, not Petitioner, shot the victim. *See id.* The Missouri Court of Appeals' determination was reasonable and establishes that the outcome of the trial would not have been different had the motion to sever been granted and this evidence not admitted.

Petitioner's third argument is that, had the trials been severed, he would have been able to introduce evidence that the day before the robbery and murder, Ronald allegedly had a gun and used it to shoot at his girlfriend, Peaches. This argument was not presented in Petitioner's direct appeal, and thus it is arguably appropriate for this Court to disregard it and limit its review to the

facts related to the arguments and facts that were made before the state court. *See Ward v. Norris*, 577 F.3d 925, 935-36 (8th Cir. 2009) (holding that where the petitioner's argument in support of his ineffective assistance of counsel claim "contain[ed] significant additional facts that expand the scope of the claim he presented both to the state courts and the district court" the court would "limit [its] review to the facts related to the argument made to the state courts"). However, even if this Court did consider these new arguments and facts, they would not warrant relief. The record reflects that the trial court refused to admit the evidence regarding Ronald shooting at Peaches at least in part because the trial court found it "tangential and collateral." *See* Resp't Ex. I, at Tr. 729-30, and the record also shows that the trial court was skeptical that it would have been admissible even in a separate trial. Resp't Ex. J, at Tr. 1078-80. Petitioner has not established that he would have been able to present this evidence had he been tried separately. Nor has he established that the admission of this evidence would have changed the outcome of the trial. As the Missouri Court of Appeals reasonably found in addressing a separate claim related to the failure to admit this evidence (discussed in more detail below), Petitioner's claim that Ronald shooting at Peaches prior to the murder related in any way to the crime against the victim is based on speculation, and evidence that Ronald harbored hostility toward the victim does not refute the evidence that Ronald and his co-defendants wanted to rob the victim, because "[f]inancial motivation and enmity are not mutually exclusive motives." *See* Resp't Ex. B, at pp. 18-19. This determination was not unreasonable.

For all of the above reasons, the Missouri Court of Appeals' rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Therefore, Petitioner is not entitled to relief on Ground Three.

### D. Ground Four: Introduction of Evidence Concerning the Circumstances Surrounding Petitioner's Arrest

In Ground Four, Petitioner argues that the trial court erred in permitting the introduction of evidence concerning the circumstances surrounding his arrest, in particular the fact that he was found in a truck, passed out, with cocaine in his lap. Petitioner raised this claim in his direct appeal, and the Missouri Court of Appeals denied it on the merits. Resp't Ex. B, at pp. 13-17.

To the extent that Petitioner's claim is that the trial court erred in its ruling on an evidentiary matter, this claim is not cognizable for purposes of habeas review. "Rules of evidence and trial procedure are usually matters of state law. A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process." *Bucklew v. Luebbers*, 436 F.3d 1010, 1018 (8th Cir. 2006) (quoting *Adail v. Wyrick*, 711 F.2d 99, 102 (8th Cir. 1983)). The Eighth Circuit has found that "there is no due process violation simply because a trial court admits evidence of a defendant's uncharged bad acts." *Harris v. Bowersox*, 184 F.3d 744, 752 (8th Cir. 1999). Instead, to show a federal due process violation, the habeas petitioner "must show that the alleged error rendered the entire trial fundamentally unfair—that there is a reasonable probability that the error complained of affected the outcome of the trial—i.e., that absent the alleged impropriety, the verdict probably would have been different." *Id.* (quoting *Carter v. Armontrout*, 929 F.2d 1294, 1296 (8th Cir. 1991)).

The Missouri Court of Appeals' rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. The Missouri Court of Appeals found that this evidence was admissible under Missouri law, because Petitioner had opened the door to this evidence through his own presentation of argument and evidence. Resp't Ex. B, at p. 16. This Court may not second-guess the state court's decision on a

matter of Missouri law. Moreover, the Court found no prejudice from the admission of the evidence, stating:

> Even if evidence of the circumstances surrounding [Petitioner]'s arrest was inadmissible, [Petitioner] failed to demonstrate he was prejudiced by its admission at trial. First, the evidence did not connect [Petitioner] to the crimes for which he was on trial, as [Petitioner] was standing trial for second-degree murder, first-degree robbery, and armed criminal action, not for drug possession. *See State v. Bolds*, 11 S.W.3d 633, 639 (Mo. App. E.D. 1999); *cf. State v. Miller*, 821 S.W.2d 553, 555 (Mo. App. E.D. 1991) (holding that evidence of prior acts of unconvicted misconduct is especially prejudicial where the alleged prior bad acts are similar to the case on trial).
>
> Furthermore, given the number of prior crimes that were admissible against [Petitioner], [Petitioner] fails to demonstrate how he was prejudiced by evidence that, at the time of his arrest, he had in his possession what appeared to be cocaine. *See, e.g.*, *Worthington v. State*, 166 S.W.3d 566, 582 (Mo. banc 2005). Specifically, [Petitioner] testified that, since 1999, he had pleaded guilty to second-degree robbery, felonious restraint, three counts possession of heroin, two counts possession of a cocaine base, one count possession of drug paraphernalia, two counts possession of diazepam, one count possession of alprazolam, and a federal charge of felon in possession of a weapon. [Petitioner] also testified about time he had served in prison and long-term drug treatment programs. In light of [Petitioner]'s lengthy criminal record and history of drug possession, we do not believe that the evidence of circumstances surrounding his February 29, 2008 arrest was so prejudicial as to require reversal.

Resp't Ex. B, at pp. 16-17. The Missouri Court of Appeals' analysis was reasonable. In light of the lack of connection between the charged crimes and the cocaine possession, as well as the admissibility of numerous other past crimes committed by Petitioner, Petitioner cannot show that there is a reasonable probability that the admission of this evidence affected the outcome of the trial.

For all of the above reasons, Petitioner is not entitled to relief on Ground Four.

### E. Ground Five: Failure to Permit Presentation of Evidence that Ronald Had Shot a Gun at His Girlfriend, Peaches, the Day Before the Offense

In Ground Five, Petitioner argues that the trial court erred by not allowing Petitioner the opportunity to present evidence that, a day before the offense, Ronald had shot a gun at his

girlfriend, Peaches. Petitioner presented this argument in his direct appeal, and it was denied on the merits. *See* Resp't Ex. B, at pp. 17-19.

As with Ground Four, to the extent that Petitioner's claim is that the trial court erred in ruling on an evidentiary matter, this claim is not cognizable for purposes of habeas review. "The exclusion of a witness based on state evidentiary rules results in the denial of due process only if there was an impropriety so egregious that it made the entire proceeding fundamentally unfair." *Skillicorn v. Luebbers*, 475 F.3d 965, 972 (8th Cir. 2007). To satisfy this standard, a habeas petitioner must show that "absent the alleged impropriety the verdict probably would have been different." *Id*

Petitioner also suggests in his reply brief that the exclusion of this evidence violated his constitutional right to present a complete defense. It is well established that the Constitution "guarantees criminal defendants a meaningful opportunity to present a complete defense." *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013) (quoting *Crane v. Kentucky,* 476 U.S. 683 (1986)). However, "the right to present relevant testimony is not without limitation. The right may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Michigan v. Lucas,* 500 U.S. 145, 149 (1991) (quoting *Rock v. Arkansas,* 483 U.S. 44, 55 (1987)). "An accused 'does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.'" *Khaalid v. Bowersox*, 259 F.3d at 975, 978 (8th Cir. 2001) (quoting *Taylor v. Illinois,* 484 U.S. 400, 410 (1988)). A trial court may, without violating the Constitution, exclude defense evidence that is repetitive, is only marginally relevant, or poses an undue risk of harassment, prejudice, or confusion of the issues. *Garcia v. Mathes*, 474 F.3d 1014, 1017 (8th Cir. 2007) (citing *Holmes v. South Carolina*, 547 U.S. 319, 326-27 (2006))

In reviewing this claim, the Missouri Court of Appeals stated:

[Petitioner] claims the trial court erred in sustaining the State's objections and excluding evidence that, a few days prior to Victim's murder, Ronald shot a gun at his girlfriend, Peaches. [Petitioner] contends he was entitled to present this evidence to show the jury that Ronald had a motive to shoot Victim other than robbery and to show that Ronald's argument with [Victim] about [Peaches] was not just a ruse to rob [Victim]."

During [Petitioner]'s cross-examination of Vedo, defense counsel asked the trial court's permission to question Vedo about an incident several days before the murder in which Ronald shot at Peaches and Vedo told him to stop shooting. Defense counsel explained that both the State and counsel for Ronald had presented evidence that there were no problems between Ronald and Vedo, and the State was insinuating that Ronald's argument with Victim about Peaches was a ruse to lure him out of the apartment and rob him. Defense counsel believed this evidence would have supported the defense's theory that Ronald shot Victim because of a conflict involving Victim and Peaches and not for the purpose of robbing him. The trial court did not allow the evidence because it was "tangential and collateral," but did permit defense counsel to make an offer of proof.

As previously stated, trial courts have broad discretion to admit or exclude evidence at a trial, and a reviewing court will reverse only upon a showing of a clear abuse of discretion. *State v. Sanchez*, 186 S.W.3d 260, 264 (Mo. banc 2006). We review a trial court's decision to exclude evidence for prejudice, not just error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *State v. Speaks*, 298 S.W.3d 70, 80-81 (Mo. App. E.D. 2009). Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial. *State v. Johnson*, 207 S.W.3d 24, 42 (Mo. banc 2006). "Although there is a rebuttable presumption that excluded admissible evidence is prejudicial, this presumption is rebutted when the error is harmless beyond a reasonable doubt." *State v. Norman*, 145 S.W.3d 912, 920 (Mo. App. S.D. 2004).

Even if we assume *arguendo* that the trial court erred in excluding evidence that Ronald fired a gun at Peaches days before Victim's murder, such error was harmless beyond a reasonable doubt. First, [Petitioner]'s claim that this alleged incident in any way related to Victim is pure speculation. Second, evidence that Ronald might have harbored hostility toward Victim does not refute the evidence that Ronald and codefendants intended to rob Victim. Financial motivation and enmity are not mutually exclusive motives, and there was considerable evidence introduced at trial to establish that codefendants used physical force to overcome resistance to the taking of his money. Specifically, the codefendants knew that Victim dealt drugs and generally carried cash in his pockets, and as soon as Ronald shot victim and pulled him down the stairs, [Petitioner] and Vaughn searched his pants pockets, leaving them empty.

Resp't Ex. B, at pp. 17-19 (footnote omitted).

The Missouri Court of Appeals' rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The state court reasonably found that the trial court was within its discretion in not permitting the admission of this evidence because it was tangential and collateral, in that the earlier shooting directed at Peaches was not clearly related to the victim who was robbed and murdered. The trial court may exclude defense evidence that is only marginally relevant without violating the defendant's right to present a complete defense. *See Garcia*, 474 F.3d at 1017-18. The Missouri Court of Appeals reasonably determined that that is what occurred here.

The state court's determination that the exclusion of this evidence was not prejudicial, and that its admission would not have changed the outcome of the trial, was also reasonable. As the state court found, even assuming that Ronald had hostility toward the victim, that would not have shown an absence of intent to rob him, because hostility and intent to rob are not mutually exclusive and because the evidence showed that codefendants went through the victim's pants pockets immediately after the shooting. The Missouri court's conclusion is not contrary to, or an unreasonable application of, clearly established federal law, nor did it involve an unreasonable determination of the facts.

For all of the above reasons, Petitioner is not entitled to relief on Ground Five.

**F.  Grounds Six Through Ten and Ground Fourteen: Ineffective Assistance of Counsel**

In Grounds Six through Ten and Ground Fourteen, Petitioner asserts various claims of ineffective assistance of counsel. The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show ineffective assistance of counsel, Petitioner must show both that "[his] counsel's

performance was deficient" and that "the deficient performance prejudiced [his] defense." 466 U.S. at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014). To show deficient performance, Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* at 689 (citation and internal quotation marks omitted). To show prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 131 S. Ct 1388, 1410 (2011)). In the context of a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance," *Bell*, 535 U.S. at 698-99. "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

### 1. Ground Six: Ineffective Assistance of Appellate Counsel—Failure to Appeal Trial Court's Admission of Prior Consistent Statements of Avedou

In Ground Six, Petitioner argues that his appellate counsel was ineffective based on the failure to appeal the trial court's admission of the prior consistent statements of Avedou.

Petitioner raised this claim in his motion for post-conviction relief and in the appeal from the denial of that motion, and the Missouri Court of Appeals denied the claim on the merits. *See* Resp't Ex. G, at pp. 2-6.

At trial, Avedou testified that he heard the victim say something like, "Ronald, you tripping, man," that he heard a gunshot, and that he ran to the scene and saw Ronald holding a gun in one hand and holding the victim's shirt in his other hand. Resp't Ex. I, at Tr. 565-66, 568-69. He also testified that he saw Carlos and Petitioner going through the victim's pockets. *Id.* at Tr. 571-72. Avedou testified that he called 911 and told the operator that someone had been shot but that he did not know who had been shot. *Id.* at Tr. 573-74. Avedou testified that when police showed up, he told them that he did not know what had happened and just knew that someone had been shot. *Id.* at Tr. 576-78, 580. At some point later that night, the police contacted Avedou by phone, and Avedou told him what happened, including that Ronald shot the victim. *Id.* at Tr. 583-84. Four days later, Avedou went to the police station and told the police what Ronald had done, as well as what Avedou had seen Carlos Vaughn and Petitioner do. *Id.* at Tr. 586.

On cross-examination, the defense attempted to impeach Avedou with his prior statements that were inconsistent with his trial testimony: his statement to the 911 operator that he did not know who had shot the victim, and his statement to the detective who arrived at the scene that he did not know what had happened and just knew that someone had been shot. *Id.* at 629-31, 674, 680-682. The defense also pointed out that in the 911 call, Avedou had not said anything about a robbery. *Id.* at Tr. 674.

On re-direct examination, the prosecutor emphasized that Avedou's purpose in dialing 911 was to get ambulance help and that Avedou initially told the police he did not know

anything because a lot of people were around and he did not want them to know that he cooperated with the police. *Id.* at Tr. 718-20.

After Avedou's testimony, the trial court had a sidebar concerning the State's desire to introduce prior statements Avedou had made to his sisters, Marnesa and Cyntoria, that were consistent with the statement he gave at the police station and at trial. *Id.* at Tr. 739. The State wanted to introduce those statements to rebut an argument that Avedou had recently fabricated his trial testimony and to rehabilitate him from statements that he did not know what had happened. *Id.* at Tr. 739-40. After hearing arguments from counsel on both sides, the trial court permitted Avedou's sisters to testify. *Id.* at Tr. 739-46. Marnesa testified that just after the shooting, Avedou had called her and told her that Ronald shot the victim. *Id.* at Tr. 753. Marnesa also testified that at the scene, Avedou whispered to her, "Ron killed L." *Id.* at Tr. 754. Marnesa also testified that the same night, after Avedou talked to the police at the scene, Avedou told her that Ronald had shot L and that Poolock (Petitioner) and Carlos were in his pockets. *Id.* at Tr. 758-59. Cyntoria testified that at the scene, she overheard a conversation between Avedou and Marnesa in which Avedou stated that Ronald shot the victim. Resp't Ex. J, at Tr. 806.

The Missouri Court of Appeals found that Petitioner could not establish that his direct appeal counsel was ineffective for failing to raise, on direct appeal, the question of the admissibility of Avedou's prior consistent statements. The Missouri Court of Appeals found that Petitioner had not established either the deficient performance prong or the prejudice prong of *Strickland*, because he could not show that the testimony about his prior consistent statements would have been inadmissible under Missouri law, nor could he show a reasonable probability that his convictions would have been reversed had his appellate counsel raised this issue in his direct appeal. Resp't Ex. G, at pp. 5-6. The court first noted that under Missouri law, "[p]rior

consistent statements are admissible for the purpose of rehabilitating a witness whose credibility has been attacked by an express or implied claim of recent fabrication of trial testimony" and that "[s]tatements consistent with trial testimony given before the corrupting influence to falsify occurred are relevant to rebut a claim of contrivance." *Id.* at pp. 5-6. The court found that the defense had clearly indicated that Avedou's testimony was a recent fabrication and attempted to impeach him with his prior statements to the 911 operator and to police. *Id.* at p. 6. The Court also noted that Avedou told Marnesa that Ronald had killed the victim before Ronald spoke to the police. *Id.* With regard to the claim of improper bolstering, the court found that there was no improper bolstering here, because the prior statements were not offered solely to duplicate or corroborate trial testimony, but rather to rehabilitate testimony in light of insinuations that it had been fabricated. *Id.*

The Missouri Court of Appeals' denial of Petitioner's ineffective appellate counsel claim was not contrary to, or an unreasonable application of, clearly established federal law, nor did it involve an unreasonable determination of the facts. As a preliminary matter, the Court notes that the Eighth Circuit has noted:

> When appellate counsel competently asserts some claims on a defendant's behalf, it is difficult to sustain a[n] ineffective assistance claim based on allegations that counsel was deficient for failing to assert some other claims. Because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be held to be ineffective for failure to raise every conceivable issue. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.

*Link v. Luebbers*, 469 F.3d 1197, 1205 (8th Cir. 2006) (quotation marks and citations omitted). Here, Petitioner's direct appeal counsel did raise five claims on Petitioner's behalf. Petitioner has not shown that this claim is clearly stronger than those five claims.

Petitioner's arguments are focused on his contention that—contrary to the finding the Missouri Court of Appeals made in denying his ineffective assistance claim—some or all of Avedou's prior consistent statements were inadmissible under Missouri law.[3] To the extent that Petitioner is arguing that the Missouri Court of Appeals erred in its interpretation of Missouri law, the Court notes that it may not second-guess the determination of a Missouri court concerning a matter of Missouri law. *See Arnold*, 675 F.3d at 1086.

Moreover, even if some or all of Avedou's prior consistent statements should have been excluded under Missouri law, Petitioner has not shown that the Missouri Court of Appeals' determination with regard to the prejudice prong of *Strickland* was objectively unreasonable. The Missouri Court of Appeals found that Petitioner "cannot show that there was a reasonable probability that he would have been found not guilty had the statements not been admitted." Resp't Ex. G-5. Because these statements were, at most, cumulative of Avedou's testimony, the state court's finding was not objectively unreasonable in light of the record.

For all of the above reasons, Petitioner is not entitled to relief on Ground Six.

> ### 2. Ground Seven: Ineffective Assistance of Trial Counsel—Failure to Object to Questioning of Detective Jackson With Regard to Statements Made to Him by Shante Jennings

In Ground Seven, Petitioner argues that his trial counsel rendered ineffective assistance when she failed to object to the questioning of Detective Jerome Jackson with regard to statements made to him by Shante Jennings about the case when it was known that Jennings would not testify. Petitioner raised this claim in his motion for post-conviction relief and in his appeal from the denial of the motion, and the Missouri Court of Appeals rejected it on the merits. Resp't Ex. G, at pp. 6-8.

---

[3] Petitioner also argues that these statements are inadmissible under Federal Rule of Evidence 801; however, that rule does not apply to proceedings in Missouri state courts.

During opening statements, the prosecutor told the jury that it would hear from Shante Jennings, Avedou's girlfriend. Resp't Ex. I, at Tr. 511. The prosecutor stated that Jennings would testify that she saw Ronald take out a gun and follow the victim upstairs; that she heard the gunshot; that she saw the victim get pulled out onto the porch; and that she saw Carlos Vaughn roll the victim over and check one side of his pockets; and that she saw Petitioner check the other side of his pants pockets, take out money and marijuana, and hand the marijuana to Carlos Vaughn. *Id.* at Tr. 514-15. However, the prosecution later informed the trial court that it had been unable to locate Jennings to testify at trial, despite the trial court issuing a body attachment for her, despite her having been served, and despite the fact that the prosecutor had people out looking for her. Resp't Ex. J, at Tr. 911. The prosecutor subsequently presented testimony from Detective Jerome Jackson, a detective who responded to the scene of the incident at issue in this case, who testified that he had interviewed Shante Jennings as a potential witness in the case and obtained her statement. *Id.* at Tr. 937-38. Detective Jackson did not testify about the contents of her statement. Petitioner's counsel stated that she had no problem with this line of questioning. *Id.* at Tr. 937.

Petitioner argues that trial counsel was ineffective for not objecting to this line of questioning because the testimony served no purpose other than to rehabilitate the state's opening argument regarding what Jennings had seen; that Petitioner was never afforded the opportunity to cross-examine Jennings on the hearsay statements made in opening statement; and that the jury was influenced by this line of questioning because it gave credence to the statements made in opening argument. In affirming the motion court's denial of this claim, the Missouri Court of Appeals stated:

> The motion court found the State expected Jennings to appear. She was contacted by phone and was served. When she did not appear, a body attachment

was issued for her. The motion court noted that the State wanted to have its investigator testify regarding the efforts to find her, but [Petitioner]'s counsel was concerned such testimony would leave the jury with the impression that she had been threatened. The trial court decided she could be called as a rebuttal witness, but no inferences could be argued from her absence. The motion court found [Petitioner]'s claim was without merit because there was nothing to indicate the State's statements regarding Jennings during opening statements were in bad faith, and the jury was instructed that opening statements are not evidence. Further, the motion court found Detective Jackson's statements were neutral with regard to the content of Jennings' statement.

Detective Jackson's statement did not address the content of Jennings' statement. [Petitioner] has failed to show how he was prejudiced by Detective Jackson's testimony.

Therefore, we find the motion court did not clearly err in denying [Petitioner]'s 29.15 motion for post-conviction relief because his trial counsel was not ineffective for failing to object to the questioning of Detective Jackson regarding a statement made to him by Jennings. Point denied.

Resp't Ex. G, at pp. 7-8.

The Missouri Court of Appeals did not apply *Strickland* to the facts of his case in an objectively unreasonable manner. It was entirely reasonable for the court to find that the admission of Detective Jackson's testimony was not prejudicial to Petitioner, given that the prosecution did not elicit from Detective Jackson any testimony whatsoever about the content of Jennings' statements and given that the jury was instructed that statements made by counsel are not evidence. The record does not indicate that there is a reasonable probability that, but for trial counsel's failure to object to that evidence, the result of the proceeding would have been different.

Petitioner argues that he has shown prejudice because during deliberations, the jury asked the trial court the following question: "In the robbery charge, if marijuana, crack or other items are stolen, is it still considered robbery?" Petitioner argues that this question shows that the jury was influenced by the prosecution's statements about how Shante Jennings would testify— statements Petitioner argues were bolstered by Detective Jackson's testimony. The Court

disagrees. It is unclear why the jury would have needed to ask this question if they were relying on the prosecution's statements about Shante Jennings' testimony, because the prosecutor stated that Shante Jennings would testify that she saw Petitioner take out both marijuana *and* money. In addition, there was other testimony presented that the victim sold marijuana, Resp't Ex. I, at Tr. 541-42, and the jury may have been influenced by that testimony.

Petitioner also argues that the state court's determination of the facts was unreasonable, because in addressing Petitioner's argument in a related claim—that trial counsel was ineffective for not requesting a mistrial when it became apparent that Jennings was not going to appear—the motion court stated, "The Court notes that Avedou testified that [Petitioner] went through victim's pockets and took items." Resp't Ex. E, at p. 9. As Petitioner correctly points, out, this statement was incorrect: Avedou actually testified only that he saw Petitioner go through the victim's pockets; he did not see Petitioner take anything. Resp't Ex. I, at pp. 571-72, 701. However, the Court does not find that this error undermines the state court's decision. The Missouri Court of Appeals, in its summary of the facts relevant to this claim, did not repeat this error. It instead found no prejudice because Detective Jackson's testimony did not address the content of Jennings' statement. Resp't Ex. G, at p. 7. That determination was reasonable.

For all of the above reasons, Petitioner is not entitled to relief on Ground Seven.

### 3. Ground Eight: Ineffective Assistance of Trial Counsel—Failure to Cure Damage Done to the Defense by the State's Opening Statement Promising the Testimony of Shante Jennings

Ground Eight is closely related to Ground Seven. In Ground Eight, Petitioner argues that his trial counsel was ineffective because she failed to cure the damage done to the defense by the prosecutor's opening statement indicating that Shante Jennings would testify that just after the shooting, she saw Petitioner check the victim's pants pockets, take out money and marijuana,

and give it to his co-defendant. Petitioner argues that his trial counsel should have requested a continuance, curative instruction, or mistrial, or should have argued the facts in closing argument. Petitioner raised this issue in his motion for post-conviction relief and in his appeal from the denial of that motion, and it was denied on the merits. Resp't Ex. G, at pp. 8-9.

In addressing this claim, the Missouri Court of Appeals stated:

> The motion court found there was nothing to indicate the State's statements regarding Jennings during opening statements were in bad faith, and the jury was instructed that opening statements are not evidence. Further, the motion court found Detective Jackson's statements were neutral with regard to the content of Jennings' statement. In addition, the motion court noted the decision whether to highlight during closing argument the fact that Jennings had not testified was a matter of trial strategy and could have been harmful depending on the inferences the jury may have drawn from her absence. Lastly, the motion court noted a mistrial would not have been warranted here, and it did not believe the jury's question regarding the items stolen demonstrated that the reference to Jennings in the opening statement had a decisive effect on the trial.
> The allegation that counsel gave an ineffective closing argument is a matter of trial strategy which does not provide a basis for post-conviction relief. *State v. Hamilton*, 791 S.W.2d 789, 797 (Mo. App. E.D. 1990). Further, [Petitioner] cannot show he was prejudiced because the jury was told opening statements were not part of the evidence in the case.
> We find the motion court did not clearly err in denying [Petitioner]'s 29.15 motion for post-conviction relief because his trial counsel was not ineffective for failing to cure the alleged damage done by the State's opening statement that promised testimony from Jennings and told the jury what the testimony would be. Point denied.

Resp't Ex. G, at pp. 8-9.

The Missouri Court of Appeals' decision did not involve an objectively unreasonable application of *Strickland*. Trial counsel's decision not to bring up the topic of Shante Jennings, either through a statement in closing argument or by requesting a curative instruction, was a reasonable trial strategy, particularly in light of the fact that the prosecution's description of her testimony was unfavorable to Petitioner and in light of the possibility that the jury might have inferred from her absence that she had been intimidated or otherwise persuaded not to testify. In

addition, it was not unreasonable for the state court to find that, in light of the instruction to the jury that opening statements were not part of the evidence, Petitioner was not prejudiced by trial counsel's failure to take additional steps to attempt to address the possible damage done by the opening statements.

Petitioner also argues that he was prejudiced because had Jennings testified (after a continuance or mistrial), her testimony could have been used to impeach Avedou's testimony, because Avedou testified that Petitioner and Carlos started going into the victim's pockets when he was standing, whereas Jennings testified in her deposition that the victim had fallen face down and had to be rolled over before his pockets were gone through. However, the potential value to Petitioner of that impeachment testimony would have been outweighed by the negative impact of having Jennings testify that she saw Petitioner going through the victim's pockets and taking out money and marijuana. Thus, even assuming that a motion for a continuance or a mistrial would have led to a situation in which Jennings could have testified, Petitioner cannot show that it would have changed the outcome of the trial.

Petitioner also reiterates the arguments he made with respect to Ground Seven that the question the jury posed to the Court regarding the items stolen shows prejudice, and that the motion court's mischaracterization of Avedou's testimony undermines its decision. Those arguments are without merit for the reasons stated above.

In his Reply, Petitioner argues that the state must have known that Jennings was not going to testify, because during voir dire, the prosecutor asked jurors whether they could convict someone of murder based on the testimony of a single witness with prior convictions. *See* Resp't Ex. I, at Tr. 383-390. This questioning does not establish knowledge that Jennings would not testify. The prosecution may simply have been concerned that another of its witnesses might

become unavailable or that one of its witnesses might be disbelieved. Moreover, even assuming that Petitioner could show that the prosecution knew Jennings would not be available, Petitioner cannot show that his counsel's failure to request a continuance, mistrial, or curative instruction or to discuss this matter in closing argument resulted in prejudice to him.

For all of the above reasons, Petitioner is not entitled to relief on Ground Eight.

### 4. Ground Nine: Ineffective Assistance of Trial Counsel—Failure to Pursue Green's Motion to Suppress In-Court Identification

In Ground Nine, Petitioner argues that his trial counsel was ineffective because she failed to pursue Petitioner's motion to suppress witnesses' in-court identifications of him.[4] Petitioner asserts that trial counsel should have pursued a motion to suppress the identifications because there had not been a prior identification procedure and because the witnesses did not give a description of the perpetrator at the time of the murder. Petitioner raised this claim in his motion for post-conviction relief and in the appeal from the denial of his motion for post-conviction relief, and it was denied on the merits. *See* Resp't Ex. G, at pp. 9-11.

In assessing this claim, the Missouri Court of Appeals stated:

> At trial, Avedou testified he became familiar with [Petitioner] because he saw him talking to Carlos and Ronald everyday for a few weeks. Avedou then identified [Petitioner] in court based on his familiarity with him. Avedou also testified he saw [Petitioner] going into the victim's pockets after he had been shot.
> Cyntoria also testified the night of the shooting, Ronald and [Petitioner] came to her house. Cyntoria testified she had seen [Petitioner] before and knew what he looked like. Cyntoria then identified [Petitioner] in court. . . .
> Here, the objections [Petitioner] complains his counsel failed to make cannot be the basis of a claim for ineffective assistance of counsel because they had no merit. Movant asserts no factual reason the identifications should have been excluded. Movant made no claim of impermissibly suggestive police procedures. Where, as here, a movant's arguments do not involve a claim of

---

[4] Petitioner's counsel did file a motion to "suppress all testimony by any witness in this cause regarding the identification (via photo lineup, live line up or photo of live line up) of [Petitioner]." Resp't Ex. L, at p. 17. However, Petitioner's counsel did not present this motion at the pre-trial conference. *See* Resp't Ex. G, at p. 9.

impermissible suggestiveness on the part of the police, but rest entirely on factors relating solely to the reliability of the identification made by a particular witness or witnesses, he has no valid basis for arguing that the witness' identification testimony should have been suppressed, because any such factors go only to the weight of the testimony, not its admissibility.

Therefore, the motion court did not clearly err in denying his 29.15 motion for post-conviction relief because his trial counsel was not ineffective for failing to pursue Movant's motion to suppress in-court identification and request a ruling.

*Id.*

The Missouri Court of Appeals' decision did not involve an objectively unreasonable application of *Strickland* and was not contrary to, or an unreasonable application of, clearly established federal law. As Petitioner points out, a conviction based on eyewitness identification will be set aside as violating due process when it is based on pretrial identification procedures that "were so impermissibly suggestive that they give rise to a very substantial likelihood of irreparable harm." *Tevino v. Dahm*, 2 F.3d 829, 833 (8th Cir. 1993). However, Petitioner does not identify any impermissibly suggestive pretrial identification procedures here. Petitioner also cites no legal authority to suggest that the absence of a particular pretrial identification procedure requires exclusion of eyewitness identification.

Petitioner also appears to suggest that the in-court identification was impermissibly suggestive and unreliable because he was the only male of his race (other than Ronald) seated at the defense counsel table. However, even assuming, *arguendo*, that such a situation could render an in-court identification so suggestive or unreliable that admission of the identification would violate due process, the record does not support a finding that it did so in this case. Both Avedou and Cyntoria testified that they were personally familiar with Petitioner before the crime at issue occurred, and they identified him based on their personal recognition of him. *See* Resp't Ex. I, at Tr. 549-51; Resp't Ex. J, at Tr. 808, 812. Because Petitioner has not offered any reason to

believe that these identifications were inadmissible, trial counsel did not render deficient performance by failing to object to their admission, nor was Petitioner prejudiced by that failure.

For all of the above reasons, Petitioner is not entitled to relief on Ground Nine.

### 5. Ground Ten: Ineffective Assistance of Trial Counsel—Failure to Investigate and Challenge the Validity of Petitioner's Arrest and to Move to Suppress Evidence Obtained After the Arrest

In Ground Ten, Petitioner argues that his trial counsel was ineffective based on a failure to investigate Petitioner's arrest and to move to suppress all evidence obtained after that arrest. Petitioner raised this claim in his motion for post-conviction relief and in the appeal from the denial of that motion, and the claim was denied on the merits. *See* Resp't Ex. G, at pp. 11-12. In denying Petitioner's claim, the Court of Appeals stated, "The fact that [Petitioner]'s counsel failed to challenge the legality of the arrest is irrelevant. [Petitioner] could only have been prejudiced if evidence was admitted as a result of the illegal arrest. [Petitioner] fails to identify any such evidence and we can find none in the record." *Id.*

Although it is somewhat unclear from the Petition, it appears that Petitioner is asserting that his arrest was illegal because it was not based on probable cause, and that his trial counsel should have attempted to suppress statements he made after his arrest. Specifically, Petitioner notes that, at the time of his arrest, he made a statement that he was not present when the murder occurred. *See* Resp't Ex. J, at Tr. 1118-1119. He points out that on cross-examination, the prosecutor used that statement to impeach Petitioner's testimony at trial that he *was* present at the time of the murder but was not involved in it. *Id.* at Tr. 1150. He also points out that, during closing argument, the prosecution pointed out that in his first statement to the police, he had said, "I'm not in the area that night," which contradicted his trial testimony. *Id.* at Tr. 1341-42.

After review of the record, the Court finds that the Missouri Court of Appeals' determination involved a reasonable application of *Strickland*. Assuming, *arguendo*, that Petitioner's arrest was illegal and that his trial counsel should have moved to suppress his statement to the police that he was not in the area the night of the murder, Petitioner cannot show that he was prejudiced by trial counsel's failure to move to suppress. At most, the admission of this statement undermined Petitioner's credibility by showing that he had at one point lied to police about the night in question. It did not undermine the primary evidence on which Petitioner was convicted—Avedou's testimony about what he saw Ronald, Carlos, and Petitioner doing. The Court further notes that the prosecutor impeached Petitioner's credibility on other bases, such as his prior convictions. *Id.* at Tr. 1341. Petitioner cannot show that there is any reasonable possibility that the suppression of this one statement, used only for impeachment purposes, would have changed the outcome of the trial. Thus, he cannot show prejudice under *Strickland*.

For the reasons stated above, Petitioner is not entitled to relief on Ground Ten.

### 6. *Ground Fourteen: Ineffective Assistance of Trial Counsel—Cumulative Errors*

In Ground Fourteen, Petitioner argues that his trial counsel was ineffective because of a combination of errors: trial counsel's failure to object to the questioning of Detective Jackson about the statements made to him by Shante Jennings; trial counsel's failure to cure the damage done by the State's description of Shante Jennings' statements during its opening statement; and trial counsel's failure to pursue Petitioner's motion to suppress identification or to object to the in-court identifications of Petitioner. Petitioner did not raise this claim in his amended motion for post-conviction relief. *See* Resp't Ex. D. Petitioner did raise it on appeal from the denial of his post-conviction motion, Resp't Ex. F, at pp. 46-48.

The Missouri Court of Appeals denied the claim as procedurally barred because Petitioner failed to raise it in his amended motion for post-conviction relief. Resp't Ex. G, at p. 13. The Court also held that assuming, *arguendo*, that it was not procedurally barred, the claim was without merit because "numerous non-errors cannot add up to error." *Id.*

Federal courts may generally not grant habeas relief where a prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). *See also Wooten v. Norris*, 578 F.3d 767, 777 (8th Cir. 2009) ("Federal courts may not grant habeas relief based on procedurally defaulted claims if the state court's reason for finding default rests on adequate and independent state grounds."); *Collier v. Norris*, 485 F.3d 415, 425 (8th Cir. 2007) (the adequate and independent state law doctrine "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement.") (quoting *Coleman*, 501 U.S. at 729-30). To be adequate and independent, "[t]he procedural rule relied upon by the state court must be 'firmly established, regularly followed and readily ascertainable when it was applied.'" *Winfield v. Roper*, 460 F.3d 1026, 1036 (8th Cir. 2006) (quoting *Malone v. Vasquez*, 138 F.3d. 711, 717 (8th Cir. 1998)). Here, the state court declined to address this claim based on Petitioner's failure to follow the state procedural requirement that ineffective assistance claims be raised in a Rule 29.15 motion for post-conviction relief. Petitioner does not dispute that this rule is firmly established, is regularly followed, and was readily ascertainable when applied.

A federal habeas court will not consider a claim that was defaulted pursuant to an independent and adequate state procedural rule unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate

that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Petitioner does not attempt to make any showing of cause and prejudice, nor does he argue that the fundamental miscarriage of justice exception applies. Thus, this Court may not grant relief on this claim.

Moreover, even assuming, *arguendo*, that Petitioner's claim was not procedurally barred, it is without merit. "[A] habeas petitioner cannot build a showing of prejudice [in an ineffective assistance claim] on a series of errors, none of which would by itself meet the prejudice test." *Hall v. Luebbers*, 296 F.3d 685, 692 (8th Cir. 2002) (citing *Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996)). *Accord Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006). Because the Court has already found that Petitioner cannot succeed on any of these individual claims of ineffective assistance of counsel, he cannot succeed on the claim of cumulative error.

For all of the above reasons, Petitioner is not entitled to relief on Ground Fourteen.

### G.  Grounds Eleven Through Thirteen: Prosecutorial Misconduct

In Grounds Eleven through Thirteen, Petitioner argues that his right to a fair trial was violated due to several instances of prosecutorial misconduct. In Ground Eleven, Petitioner argues that although the prosecutor knew that he had lost contact with his witness, Shante Jennings, he withheld that information from the Court and the defense until the last day of the state's case, while using the witness's statements during opening statements. In Ground Twelve, Petitioner argues that the prosecutor argued facts not in evidence related to letters that Ronald wrote to the police. In Ground Thirteen, Petitioner argues that the prosecution impermissibly shifted the burden of proof to Petitioner during closing argument.

Petitioner did not raise any of these claims in his direct appeal. *See* Resp't Ex. A, at pp. 18-24. He raised these claims in his amended motion for post-conviction relief. *See* Resp't Ex.

D, at pp. 9-11.The motion court considered the claims as one claim of prosecutorial misconduct and declined to review the claim, stating:

> This claim is not cognizable in a Rule 29.15 proceeding. Claims of prosecutorial misconduct are generally grounds for direct appeal, and such a claim may only be raised in a Rule 29.15 proceeding where the alleged misconduct was serious and would not have been apparent during the trial. *Tisius v. States*, 183 S.W.3d 207, 212 (Mo. banc 2006); *see also Reagan v. State*, 751 S.W.2s 793, 795 (Mo. App. 1988). The facts alleged here were all readily apparent at the time of trial and [Petitioner] has not stated any reason for why the claims were not raised in his direct appeal.

Resp't Ex. E, at pp. 11. In his appeal from the denial of the motion for post-conviction relief, Petitioner raised his prosecutorial misconduct argument as part of ineffective assistance of counsel claim rather than as a claim of prosecutorial misconduct. *See* Resp't Ex. F, at pp. 41-46. The Missouri Court of Appeals found the ineffective assistance claim procedurally barred because Petitioner had not raised it in his amended motion for post-conviction relief. *See* Resp't Ex. G, at p. 12 (citing *Barnett v. State*, 103 S.W.3d 765, 773 (Mo. banc 2003)).

As discussed above, federal courts may generally not grant habeas relief where a prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule. *See Coleman*, 501 U.S. at 750; *Wooten*, 578 F.3d at 777; *Collier*, 485 F.3d at 425. Here, the state court declined to address the prosecutorial misconduct claims in Grounds Eleven through Thirteen based on Petitioner's failure to follow the state procedural requirement that prosecutorial misconduct claims that were apparent at trial be raised in a direct appeal, not a Rule 29.15 motion for post-conviction relief. Petitioner does not dispute that this rule is firmly established, is regularly followed, and was readily ascertainable when applied. *See Tisius v. State*, 183 S.W.3d 207, 212 (Mo. 2006) ("A freestanding claim of prosecutorial misconduct is generally not cognizable in a Rule 29.15 proceeding. Rule 29.15 is not a substitute for direct appeal. *State v. Carter*, 955 S.W.2d 548, 555 (Mo. banc 1997). . . . If the alleged misconduct was

apparent at trial, then it is an issue for direct appeal, not a Rule 29.15 proceeding.").

Petitioner asserts no basis for finding either cause or prejudice here to excuse the procedural default. He also does not argue that the fundamental miscarriage of justice exception applies. Accordingly, Petitioner is not entitled to relief on Grounds Eleven through Thirteen.

## V. CONCLUSION

For all of the above reasons, Petitioner is not entitled to federal habeas relief. Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit judge or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). To grant such a certificate, the judge must find that the petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2); *Tiedman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). The Court finds that this standard is not satisfied, so the Court will not issue a certificate of appealability. Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 30) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue because Petitioner has failed to make a substantial showing that he has been denied a constitutional right. 28 U.S.C. § 2253.

A separate Judgment shall accompany this Memorandum and Order.

_Shirley Padmore Mensah_ (signature)

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of September, 2016.